UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID LEE A. WILLIAMS,
        Plaintiff,

v.                               Case No. 06-C-597

DR. MICHAEL GREBNER, MEDICAL FEDERATION,
CHARLES FITZGERALD, CHRISTINE BECKER,
MELISSA VAN HOFF and ERIKA COATES,
        Defendants.

## DECISION AND ORDER

Plaintiff David Lee A. Williams filed this pro se civil rights actions pursuant to 42 U.S.C. § 1983. On December 18, 2006, I granted plaintiff leave to proceed in forma pauperis on an Eighth or Fourteenth Amendment claim that defendants were deliberately indifferent to plaintiff's serious medical needs while he was incarcerated at the Milwaukee County Jail. Specifically, plaintiff alleges that he suffers from scoliosis, arthritis and high blood pressure but defendants refused to dispense his prescribed medication and would not refill his prescriptions, even with a court order. He further alleges that defendants gave him medication to which he was allergic. Both parties have filed motions for summary judgment, defendants have filed two motions to strike, and plaintiff has filed a motion for reconsideration. All of these motions will be addressed herein.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion;

"the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For a fact to be material, it must relate to a matter that "might affect the outcome of the suit." Id.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy his initial burden simply by pointing out the absence of evidence. Id. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989). In considering a motion for summary judgment, the court may consider any materials that would be admissible at trial. Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000). It must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

The fact that both parties have moved for summary judgment, and thus both parties are arguing that there is no genuine issue of fact, does not empower me to enter judgment as I see fit. See 10A Charles Alan Wright et al. § 2720 at 327-28 (3d ed. 1998). I may grant

2

summary judgment only if one of the parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. See Mitchell v. McCarty, 239 F.2d 721, 723 (7th Cir. 1957). Each party, as a movant for summary judgment, bears the burden of showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. See Wright et al., supra, § 2720 at 335.

## II.  FACTS[1]

During the relevant period, plaintiff was an inmate at the Milwaukee County Jail ("the jail") and defendants were all medical professionals working at the jail. Dr. Michael Grebner was a physician, Christine Becker was a registered nurse, Erika Coates was a licensed practical nurse, Charles Fitzgerald was a licensed practical nurse and Melissa Van Hoff was a nurse practitioner.[2]

When, on August 12, 2005, plaintiff was booked into the jail, he had two prescription medications on his person: Diazepam and Soma (Carisoprodol). These medications are used as muscle relaxants and, in defendant Grebner's medical opinion, they should only be prescribed on a short-term basis. As such, Grebner ordered the medical staff to dispense

---

[1] Facts are taken from Defendants' Proposed Findings of Fact and the affidavits to which they refer. Plaintiff did not file a response to defendants' proposed facts and therefore such facts are undisputed. See Civil L.R. 56.2(e) (E.D. Wis.).

[2] Defendant "Medical Federation" was never served. The jail's nursing supervisor advised the U.S. Marshal Service that such an entity had no association with the jail and the Marshal Service noted on the record that it required additional information to serve Medical Federation. Plaintiff never provided additional information. As such, regardless of the outcome of the motions, Medical Federation must be dismissed from this action.

3

them to plaintiff until his personal supplies were gone and then discontinue them until plaintiff could be evaluated. Plaintiff continued taking Diazepam through August and Soma through September. After these medications were gone, Grebner ordered that plaintiff take Amitriptyline, an antidepressant that also acts as a pain reliever and sleep aid. He felt that the Amitriptyline would provide plaintiff with the same benefit as Soma and Diazepam.

Over the next several months, plaintiff had frequent contact with jail medical staff. On September 29, 2005, defendant Van Hoff saw him for chronic high blood pressure. Van Hoff noted that plaintiff was able to move about "with ease." (Van Hoff Aff. at ¶ 5.) She also noted that plaintiff was not interested in discussing his high blood pressure, but rather was concerned about obtaining narcotics for alleged chronic pain. Plaintiff told Van Hoff that he had not had "celebrex, methadone, and darvocet since incarceration." (Id.) Van Hoff, as a nurse practitioner who can prescribe medication, ordered Extra Strength Tylenol and also continued Verapamil for plaintiff's high blood pressure. She noted that plaintiff was already taking Amitriptyline as a sleep aid. Although she did not deem it urgent, Van Hoff referred plaintiff to Grebner so he could evaluate plaintiff's complaints of chronic pain.

On November 2, 2005, Grebner examined plaintiff regarding plaintiff's complaints of pain. Plaintiff reported that he had severe scoliosis and had been receiving opiates and muscle relaxants for years. Grebner noted that plaintiff climbed on and off the exam table easily. When Grebner asked plaintiff to bend forward to demonstrate the scoliosis, plaintiff repeatedly shifted positions to avoid being observed directly from behind. Grebner, however, was able to observe plaintiff's back and, in his professional opinion, he did not see scoliosis. At this point, Grebner was suspicious that plaintiff was exaggerating his symptoms in an effort to obtain medications. He also knew that plaintiff had been inconsistently

4

reporting allergies to medications such as Tylenol and Motrin but had been routinely taking Extra Strength Tylenol without any reaction. In his professional opinion, Grebner did not believe that narcotics or opiates were proper for plaintiff and suggested that medical staff manage plaintiff's pain with Extra Strength Tylenol and Amitriptyline.

On March 20, 2006, plaintiff saw Nurse Van Hoff again. Van Hoff was aware that Grebner had seen plaintiff and had questioned the veracity of his pain complaints. She was also aware that Grebner had continued plaintiff on Extra Strength Tylenol and Amitriptyline. Plaintiff had a normal physical exam and Van Hoff continued plaintiff's prescriptions as Grebner had prescribed them.

On May 15, 2006, Van Hoff saw plaintiff again. Plaintiff was refusing to take his blood pressure medication and was again complaining of chronic pain and wanting his, "Valium, Somas and my Flexeril." (Van Hoff Aff. at ¶ 8.) Plaintiff agreed to remain on the blood pressure medication. Nurse Van Hoff agreed to try a slightly stronger painkiller, Trilisate, and also agreed to start him on Robaxin, a muscle relaxant. She, too, was suspicious of plaintiff and considered the possibility that he was exaggerating his symptoms in an effort to obtain medication as part of her decision regarding what medications to offer plaintiff.

On August 15, 2006, Van Hoff followed up with plaintiff. Plaintiff complained of side effects of his blood pressure medication so Van Hoff changed his blood pressure medication from Verapamil to Enalapril. Plaintiff again expressed concern regarding chronic pain and requested more muscle relaxants. Van Hoff felt that plaintiff was stable regarding pain so she did not change his medications. At no point in her treatment of plaintiff did Van Hoff feel that plaintiff required narcotics or outside medical treatment.

5

On September 8, 2006, Grebner saw plaintiff for the last time. Earlier, a nurse practitioner, Josie Veal, had started plaintiff on the painkiller Salsalate but plaintiff claimed it did not help. Plaintiff further reported that he was stiff and needed muscle relaxants. Grebner, however, noted that plaintiff walked into the room without hesitation and observed that plaintiff was able to climb on and off the exam table without difficulty. Grebner offered plaintiff a trial of Naproxen to replace the Salsalate, which plaintiff accepted. In Grebner's professional opinion, he did not believe that narcotics or opiates were proper for plaintiff.

On September 28, 2006, Van Hoff saw plaintiff for the last time. Plaintiff complained of side effects from the Naproxen. Van Hoff suggested that she could change the Naproxen but plaintiff did not want a different medication. On November 15, 2006, plaintiff refused his scheduled visit with Nurse Van Hoff.

Throughout plaintiff's stay at the Jail, many nurses administered various medications to him. Defendant Becker administered Soma, Extra Strength Tylenol, and Verapamil to plaintiff numerous times. Defendant Coates administered Extra Strength Tylenol, Norvasc, Benadryl, Verapamil, Zantac, Amitriptyline, Enalcpril, Naproxen and Salsalate to plaintiff numerous times. Defendant Fitzgerald administered Norvasc, Extra Strength Tylenol, Verapamil, Zantac, Ranitidine, Salsalate, Naproxen, Enalapril and Erythromycin Opthalmic numerous times. Each medication administration was done pursuant to a scheduled medication pass authorized by Grebner or a nurse practitioner, as Becker, Coates, and Fitzgerald are not able to prescribe, change or order medications.

During plaintiff's incarceration, none of the defendants were aware of any medical requests made by plaintiff that were not treated promptly and appropriately by the jail's medical and nursing staff. Further, they were not aware of any time where plaintiff's needs

for medical treatment were ignored or denied. They also note that plaintiff did not have an allergic reaction to any of the medications given to him and that none of them were aware of any court order requiring plaintiff to take certain medications. Finally, they aver that, though plaintiff signed numerous releases for various physicians and pharmacies that he had visited prior to his incarceration, those care providers failed to respond to the releases. In Grebner's professional experience, it is not unusual for a medical provider to refrain from sending requested records if that provider is over-prescribing medications.

## III.  ANALYSIS

**A.    Plaintiff's Motion for Summary Judgment**

On July 23, 2007, plaintiff filed a motion for summary judgment. Plaintiff's motion consists of an unsworn three-page document. For the most part, the motion reiterates complaint allegations that defendants denied plaintiff prescribed medication and ignored a court order that such medications be continued. Defendants filed a motion to strike plaintiff's motion for failure to comply with Civil Local Rules 7.1 and 56.2 (E.D. Wis.) in that:

> (1) Mr. Williams did not file a certificate stating that no supporting documents will be filed pursuant to Civil Local Rule 7.1(a)(2);
>
> (2) Mr. Williams' moving papers did not include either (1) a stipulation of facts between the parties, or (2) his proposed findings of fact supported by specific citations to evidentiary materials in the record pursuant to Civil Local Rule 56.2(a)(1), (2), and (3).
>
> (3) Mr. Williams' moving papers did not include factual propositions contained in numbered paragraphs, with the contents of each paragraph limited as far as practicable to a single factual proposition pursuant to Civil Local Rule 56.2(a)(2).

(Defs.' Mot. to Strike at 1-2.)

7

Although district courts may liberally construe the federal and local rules for pro se litigants, even pro se litigants must follow those rules. See McNeil v. United States, 508 U.S. 106, 113 (1993); Metro. Life Ins. Co. v. Johnson, 297 F.3d 558, 562 (7th Cir. 2002). Recently, in Correa v. White, No. 07-3785, 2008 WL 564727, at *2 (7th Cir. Mar. 4, 2008), the Seventh Circuit Court of Appeals granted the defendants/appellees' motion to strike the pro se plaintiff/appellant's appeal brief that did not comply with that court's procedural rules. The defendants/appellees had alternatively requested that the court dismiss the appeal but the court declined to do so, finding that dismissal was too harsh a sanction since it appeared that the noncompliance was due more to status as a pro se litigant than to any willful or reckless disregard of obligations of a litigant in that court. Id. at *1. The court ordered the plaintiff/appellant to file a brief that complied with the rules. Id. at *2.

I am inclined to strike plaintiff's summary judgment motion, without specific instruction for refiling, for failure to comply with this district's rules. However, plaintiff's motion is easily resolved on the merits. It is devoid of references to evidence, see Civil L.R. 56.2(a) (E.D. Wis.), and it does not indicate that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c). As such, I will deny plaintiff's motion for summary judgment and deny defendants' motion to strike as moot.

**B.    Defendants' Motion for Summary Judgment**[3]

Although not entirely clear, it appears that plaintiff was a pretrial detainee during the relevant period. It is well-established that a pretrial detainee must be afforded certain protections under the Fourteenth Amendment, including access to adequate medical care. Jackson v. Ill. Medi-Car, Inc., 300 F.3d 760, 764 (7th Cir. 2002) (citations omitted). The Due Process rights of pretrial detainees are at least as great as the protections afforded a convicted prisoner under the Eighth Amendment. Id. Accordingly, when considering a pretrial detainee's claim of inadequate medical care, the analogous standards under the Eighth Amendment are often used. Id.

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Zentmyer v. Kendall County, Ill., 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001)

---

[3]After defendants filed their reply brief regarding their motion for summary judgment, on September 28, 2007, plaintiff filed an additional brief. On October 3, 2007, defendants filed a motion to strike that brief because there is no provision permitting a party opposing a summary judgment motion to file a sur-reply. However, it appears that defendants filed their own reply brief prematurely. Plaintiff had filed a reply brief in support of his own motion but not a brief in response to defendants' motion for summary judgment. Defendants' apparent confusion is understandable given that plaintiff filed many documents in a brief period of time. However, I will deny defendants' motion to strike and will consider, for what it is worth, plaintiff's September 28 filing.

9

(quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Gutierrez, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. See Reed v. McBride, 178 F.3d 849, 852-53 (7th Cir. 1999); Gutierrez, 111 F.3d at 1371.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." Tesch v. County of Green Lake, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. See Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001) (citing Farmer, 511 U.S. at 840-42).

The first question is whether plaintiff's medical condition constitutes a "serious medical need" under the Eighth Amendment. Although defendants argue that it does not, a jury could conceivably conclude that plaintiff's pain or high blood pressure were sufficiently serious. Plaintiff was seen multiple times and prescribed numerous medications during his sixteen-month stay at the jail. See Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999) (finding that, although the serious medical need formulation was far from self-defining, it

10

applied because the ailments suffered by inmate "were certainly more than mere sniffles or the common cold").

However, a jury could not conclude that defendants were deliberately indifferent to plaintiff's medical needs. Plaintiff asserts that defendants' evidence is "pure fabrication," but he has also not offered evidence rebutting it or any evidence of a court order requiring him to take certain medication. Plaintiff filed several documents in support of his summary judgment motion, but they were introduced into the record without any supporting affidavit verifying their authenticity and are therefore inadmissible and cannot be considered for purposes of summary judgment. See Haywood v. Lucent Techs., Inc., 323 F.3d 524, 533 (7th Cir.2003); Fed. R. Civ. P. 56(e); Fed. R. Evid. 901(a). In any event, these documents do not suggest that defendants acted with deliberate indifference. They reference treatment that plaintiff received outside of the jail, but it is undisputed that, before coming to the jail, plaintiff was treated for pain, the doctors who had treated plaintiff while he was in the community did not treat him while he was incarcerated, and that jail medical staff altered plaintiff's treatment. At most, such documents suggest that doctors differed in their opinion as to the appropriate medication for plaintiff's ailments. A difference of opinion among physicians cannot support a finding of deliberate indifference. Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006) (citing Garvin v. Armstrong, 236 F.3d 896 (7th Cir. 2001)); Estate of Cole by Pardue v. Fromm, 94 F.3d 254 (7th Cir. 1996)).

The undisputed evidence shows that jail medical personnel repeatedly examined plaintiff and took his medical complaints seriously, even though they did not always match his symptoms and more than one person suspected that he was exaggerating his pain in an attempt to get narcotics. On the basis of this record, no reasonable juror could find that

any defendant was deliberately indifferent to plaintiff's serious medical need. Thus, I will grant defendants' motion for summary judgment and deny plaintiff's remaining motion – a confusing "motion for reconsideration" – as moot.

## V. CONCLUSION

**For the foregoing reasons,**

**IT IS ORDERED** that plaintiff's motion for summary judgment (Docket #44) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to strike plaintiff's motion for summary judgment (Docket #45) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that defendants' motion to strike plaintiff's September 28, 2007 brief (Docket #72) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket #59) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for reconsideration (Docket #76) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin, this 14 day of March, 2008.

/s_____
LYNN ADELMAN
District Judge